ST. PAUL WHITE LEAD & OIL COMPANY v. TIBBETTS *et al.*

1. In an action against the purchasers of certain paints to recover the contract price, the defense was that there had been a breach of warranty,

in that the paints contained no lead, and the purchaser testified that the paint was not worth more than 75 cents a gallon at the place where he did business. *Held,* that it was proper to ask defendant on his cross-examination as to what price per gallon he had obtained for the paint.

2. Where in an action against the purchaser of certain paint, the defense was that there had been a breach of warranty in that the paint contained no lead, and the defendant testified that it was not worth more than 75 cents a gallon at retail, it was competent to introduce in evidence a letter written by defendant, after becoming familiar with the quality of the paint, offering to pay plaintiff a dollar a gallon for such paint

3. An objection to testimony that it is "incompetent, immaterial, and irrelevant" is not sufficiently specific to present for review a question as to the admissibility of the testimony.

(Opinion filed August 29, 1900).

Appeal from circuit court, Douglas county.  Hon. E. G. SMITH, Judge.

Action by the St. Paul White Lead & Oil Company against F. M. Tibbetts and another to recover a balance alleged to be due for goods sold and delivered.  From a judgment in favor of plaintiff, defendants appeal. Affirmed.

*J. W. Lindsay* and *French & Orvis*, for appellants.

*E. P. Wanzer*, for respondent.

FULLER, P. J.  Plaintiff, a manufacturer of paints and oils, brought this action against F. M. Tibbetts, as principal and H. W. Johnson as guarantor to recover a balance of $35.-42 due on account of paints purchased for the purpose of retail trade; and a breach of warranty resulting in damages to the amount of $35.42, at least, was the only defense pleaded and relied upon.  Upon this appeal from a judgment in favor of plaintiff for the full amount claimed it is urged that the evi-

dence is insufficient to sustain the verdict, and that the court erred in allowing Tibbetts to testify on cross-examination that the price for which he sold the paint was $1.50 per gallon. On direct examination the witness testified that the paint for which he agreed to pay about $1.15 per gallon was represented to be composed of pure oil and lead, but owing to the fact that it contained no lead, the fair market value thereof to the retail dealer, laid down in the town where he was doing business, did not exceed 75 cents per gallon. On cross-examination he testified as follows: "I purchased this paint at our drug store in Armour. My wife was in the store at the time. The price agreed upon was $1.10, $1.15, and $1.20, with a rebate of five cents a gallon, and throw in twelve gallons. I got the quantity ordered, placed it in the store, and commenced selling it on the market here in Armour. I probably sold fifty or sixty gallons of it. Q. At what price per gallon did you sell this paint, Mr. Tibbetts? (Objected to as incompetent, immaterial, and irrelevant, and not the proper measure of value, and not proper cross-examination. Overruled. Defendants except.) A. $1.50 a gallon, I believe. Q. Now, Mr. Tibbetts, you stated in your direct examination here that the value of this paint received by you on this bill—this 'Lion Brand' of paint received from the Saint Paul White Lead and Oil Company—on the Armour market was not to exceed 65 cents to 75 cents. Is that your evidence? A. That is after I found out what the paint was,—probably six or eight weeks after I had it. I think I got it in May,—the 6th day of May,—and I probably got it ten days later. Q. You swear to the jury, Mr. Tibbetts, do you, that the value of this paint in Armour was not to exceed, at the outside, 75 cents per gallon, do you? A. I don't know as I would swear

to the exact figures.  I could tell in a few minutes what I think it is.  I figured up what I thought the paint was worth on the Armour market, and paid for it.  I don't think it was worth 75 cents a gallon.  I think they are getting a profit now of 25 cents a gallon on it.  I think the man that pays 75 cents for that paint in any market, he pays all it is worth, every bit.  I have seen Exhibit 1 before.  That is my signature to it.  I wrote the letter, and addressed it to the Saint Paul White Lead and Oil Company, and sent the letter to them through the United States mail (Exhibit 1 is offered in evidence by the plaintiff, to which the defendants object for the reason it is incompetent, immaterial, and irrelevant, and no proper foundation laid for it.  The objection is overruled.  Defendant excepts)."  Exhibit 1 is read in evidence to the jury.  Exhibit 1 is as follows:  "Armour, South Dakota, 12—4—1897.  St. Paul White Lead and Oil Company—Mr. Brown—Dear Sir:  I have this proposition to make to you: I have $35.00 deposited in the Citizens' State Bank.  Now, if you ship me 35 gallons of Lion Brand paint, I will pay you the $35.00.  Way & Co. buy paint for this, so I am informed.  It is enough, sure, for quality."  For the purpose of ascertaining the foundation of knowledge and testing the credibility of a witness who has given his opinion as to the value of property, great latitude in the discretion of the trial court is generally allowed in cross examination, so that a dealer who bought the article to sell at retail, and has testified as to its value in his store, may be called upon to state on cross-examination the price for which it sold, as the question of value is determined to some extent by what a thing has brought in the market, and the proposition goes to the source of his knowledge, rather than the measure of damages, and aids

in determining the value .of the opinion expressed. Wells v. Kelsey, 37 N. Y. 143; Hastie v. Collins, 30 Kan. 589, 1 Pac. 137. It being shown by appellant's evidence that the paint in suit was the Lion Brand, and, in his opinion, of but little value, it was competent to show that, long after becoming familiar with its character, he offered to pay respondent $35 for 35 gallons of the same brand. Surely, a sufficient foundation was laid for the admission of the letter containing his proposition, and, while the objection that it is "incompetent, immaterial, and irrelevant" is not sufficiently specific (Olson v. Railroad Co., 12 S. D. 326, 81 N. W. 634), we review the error assigned, and sustain the ruling of the trial court. We find the record convincingly against the point that the verdict is not sustained by the evidence, and the judgment appealed from is affirmed.