W. S. DWINNELL, Respondent, v. PETER LIPPERT and F. P. Lippert, Appellants.

(206 N. W. 1002.)

**Bills and notes — refusal of application to amend answer so as to allege .that former note was not returned or marked "Renewed note" held proper; directing verdict in.favor of plaintiff suing on notes at close of all testimony held proper.**

> In an action on a promissory note, the defendant, upon trial, sought to amend the answer so as to assert as an additional defense that the note in suit was taken in renewal of a former note, and that such former note was neither returned nor marked "renewed note," as provided by chapter 91, Laws 1921. The trial court denied the application to amend, and at the close of all the testimony directed a verdict in favor of the plaintiff. For reasons stated in the opinion both rulings are sustained.

Opinion filed January 4, 1926.

Bills and Notes, 8 C. J. § 1245 p. 956 n. 19; § 1371 p. 1060 n. 38.

From a judgment of the District Court of Ramsey County, *Buttz,* J., defendants appeal.

Affirmed.

*W. J. Courtney,* for appellants.

*Traynor & Traynor,* attorneys for respondent.

"Under the constitutional inhibition against legislation impairing the obligation of contracts, it is immaterial whether the obligation of a contract is impaired by acting on the remedy or directly upon the contract. Impairment in either case is prohibited." Lander v. Deemy, 46 N. D. 280.

"It is always presumed that statutes were intended to operate prospectively and all doubts are resolved in favor of such a construction." Lewis's Sutherland, Stat. Contr. 2d ed. § 642.

"If the renewal note be not paid, the holder may, at his option, surrender it and bring suit upon and enforce the original, unless it appear affirmatively that the original has been extinguished by an express or implied agreement to that effect. If it be claimed that the renewal note was not merely a conditional payment of the original, but

an absolute discharge thereof, the burden is upon the one asserting that fact to prove it." State Bank v. Mutual Teleph. Co. (Minn.) 143 N. W. 912.

"The intention is always the governing element, so that if the instrument would be valid in the one state and invalid in the other where payable, the parties will be deemed to have entered into the contract in the state or country where the instrument would be valid." 8 C. J. p. 91.

"Delivery does not necessarily import an actual physical tradition of possession from one hand to another; . . . There may be a delivery without handling the property or changing its position. The term has been judicially defined as the act by which the donor parts with his title and possession to the subject of a donation, and the donee acquires the right and possession thereto . . . transmitting the possession of a thing from one person into the power or possession of another." 18 C. J. 478.

CHRISTIANSON, Ch. J. This is an action upon a promissory note. The note was executed by the two above-named defendants. It bears date October 27th, 1921, and is payable to the order of Gray Tractor Company, Inc. Later the Gray Tractor Company, Inc., became insolvent, a receiver was appointed, and the plaintiff, Dwinnell, purchased the note from the receiver. The defendants failed to pay, and plaintiff brought this suit. The complaint is in the ordinary form. The defendants in their answer admit the execution of the note, but deny that it was given for a valuable consideration. They, also, deny that the note was delivered, and allege that it was delivered on certain conditions, and that such conditions were not fulfilled. The answer, also, contains a counterclaim. The defenses and counterclaim are not material on this appeal. The sole contention of the defendants on this appeal is that the note in suit is illegal and unenforceable by virtue of chapter 91, Laws 1921, which, so far as material here, provides:

"Sec. 1. That it shall be illegal, hereafter, for any person, or corporation, state or national bank, doing business in the state of North Dakota, to take from any debtor or other person obligated upon a promissory note, any renewal note therefor without returning the

promissory note renewed, unless there be written or printed across the renewed note the words 'Renewed note.'

"Sec. 2. Any promissory note given in renewal of a previous promissory note shall be of no force or effect unless given in conformity with Section 1 hereof."

The material facts are substantially as follows: the note in suit was executed by the two above-named defendants in payment of a balance due upon two former notes executed and delivered by the defendant F. P. Lippert to the Gray Tractor Company, Inc. The defendant Peter Lippert was not a party to such notes. The two former notes were dated respectively, October 15th and November 22d, 1920. The particular facts incident to the execution of the note in suit will be related in the course of the opinion. After the note in suit had come into possession of the Gray Tractor Company, Inc., that company became insolvent and a receiver was appointed to take charge of its affairs. The plaintiff purchased the note in suit at a receiver's sale held in July 1924. The defendants failed to pay the note and the plaintiff instituted this action in September 1924. In November 1924, certain depositions were taken and in the course of the evidence adduced upon the taking of such depositions it appeared that the two former notes had not been, physically, delivered to F. P. Lippert at the time the note in suit was executed and had not been marked renewed. The original answer did not set up as a defense that the note in suit had been taken in violation of chapter 91, Laws 1921, and no application was made for leave to amend the answer and set up this defense until after the case was brought on for trial. The case came on for trial on January 16th, 1925, upon the issues as framed by the original pleadings. After the jury had been impanelled and sworn to try the case, defendants' counsel moved for leave to amend the answer so as to plead as a defense that the note in suit was given as a renewal note and that at the time of the execution and delivery thereof the old note was not delivered to the defendants and was not marked "renewed note" as required by chapter 91, Laws 1921; and that, consequently, the note in suit is void and unenforceable. Immediately following the motion, defendants' counsel stated: "I wish to state we will stipulate that the old note was turned over to the bank at McVille and that the banker there had instructions written from the Gray Tractor Company

to turn over this note at the time that the renewal was delivered." Plaintiff's counsel objected to the proposed amendment of the answer and in connection with the objection it was stipulated between counsel for the respective parties: "that the facts in connection with the taking of the new note are as follows: Attached to the deposition of Mr. Kidd is Exhibit 9. At the end of the letter Exhibit 9, which is the report of Mr. F. O. Johnson, the salesman of the Gray Tractor Company who took the note, which exhibit is attached to the depositions herein, he stated: 'I have taken these notes subject to your acceptance and the old note and the McVille Auto Company note I have left at the bank to be surrendered if you approve.' That the notes, meaning the old notes, were left with the bank by Mr. Johnson, the said notes having previously been in the hands of the State Bank of McVille for Collection prior to the giving of the note sued upon. That on the date which the note sued upon bears two notes were taken from the defendants, one of them for the same amount and terms as the one sued upon for $2,000, and one for $426, and some cents. That these notes read: 'We promise to pay' and that when they were sent in with the report of Mr. Johnson, the bank with which the Tractor Company did business and which was taking over these notes as collateral to some indebtedness of the Gray Tractor Company, for the time being, advised that the notes be made to read: 'I' instead of 'we,' and that the Gray Tractor Company wrote to the State Bank of McVille returning the $2,000 note and the $426 to the State Bank of McVille saying as follows: 'Will you please have new notes drawn reading "I" instead of "we" and have these signed by F. P. Lippert and Peter Lippert, when you can surrender to the makers the old notes which we are sending to you herewith, returning to us the new notes and chattel mortgage after a notary public has taken Peter Lippert's acknowledgment.' That at the same time they wrote Mr. F. P. Lippert saying to him: 'Please also attend to signing the new notes at the State Bank of McVille, where we sent your old notes for collection.' On November 8, 1921, Mr. F. P. Lippert replied saying he was having his father sign the new notes but he refused to pay revenue stamps on them. The company wrote him on November 12, 1921, that they would pay the revenue stamps. Then on November 16, 1921, the State Bank of McVille forwarded the new notes, being the $426 new note, which has since been

paid, and the $2,000 note sued upon in this action to the Gray Tractor Company, stating as follows: 'In accordance with instructions contained in your letter of October 31st, we are enclosing herewith new notes together with acknowledged chattel mortgage.' The letter of the Gray Tractor Company of October 31st was the one in which they had sent the notes for correction.

"That the cashier of the State Bank of McVille Mr. Quambeck, neglected to turn over the notes to Mr. Lippert expecting Mr. Lippert to call for them, and it was let run along for a while until merely forgotten about and that the notes remained at the State Bank of McVille during all that time from 1921 until September 17, 1924, at all times being the intention of that company that they were delivered to Mr. Lippert, the Bank merely having forgotten to do so and Mr. Lippert having forgotten to call for them.

"In the meantime the Gray Tractor Company having gone into the hands of a receiver and the assets of the company having been bought by this plaintiff and conditions having arose where the plaintiff became convinced it was necessary to sue upon this note Mr. Ausland, a representative of the plaintiff, called at the bank at McVille to get their files or records in connection with the notes and at that time the banker turned over to Mr. Ausland their correspondence that they had in connection with the matter, together with these two old notes, and Ausland forwarded them to the plaintiff in this action after September 17th. And that is how they came into his hands so that they became a part of this record in taking the depositions."

The court denied defendants' application for leave to amend the answer. At the close of all the testimony both sides moved for a directed verdict. The court granted plaintiff's motion and the defendants have appealed from the judgment entered upon the verdict.

In our opinion the judgment appealed from is clearly correct and must be affirmed. The purpose sought to be accomplished by the enactment of chapter 91, Laws 1921, is apparent from the language of the statute itself. Farmers State Bank v. Jeske, 50 N. D. 813, 197 N. W. 859. See also Douglas County State Bank v. Sutherland, 52 N. D. 617, 204 N. W. 683. According to the undisputed facts, as set forth in the stipulation in this case, the note in suit was taken in payment of the balance due on two former notes representing the individual indebted-

ness of the defendant F. P. Lippert. The note was executed and delivered with the intention, both on the part of the makers and on the part of the payee, that it should constitute payment of the balance due on the two former notes and that such notes should be delivered to the payee in such former notes. The note in suit was executed in a bank at McVille, North Dakota. At the time of its execution the former notes were in the possession of such bank. There is no contention that the former notes were intentionally retained by the bank at McVille, where the new note was executed. On the contrary, it is specifically stipulated as a fact "that the cashier of the State Bank of McVille, Mr. Quambeck, neglected to turn over the notes to Mr. Lippert expecting Mr. Lippert to call for them. And it was let run along for awhile until merely forgotten about and that the notes remained at the State Bank of McVille during all that time from 1921 until September 17, 1924, it all times being the intention of that company that they were delivered to Mr. Lippert, the bank merely having forgotten to call for them."

In other words, from the stipulation of facts only one inference can reasonably be drawn and that is that the failure to cause the old notes to be actually and physically turned over to defendant Lippert was purely an inadvertence; and that he could have obtained such physical possession at any time he desired. So far as the Gray Tractor Company, Inc., is concerned it did not know that the notes had not been delivered, and there is no contention that it intentionally retained possession of the old notes. The old notes did not belong to the Gray Tractor Company, Inc., but belonged to the defendant Lippert; they remained in the bank at McVille subject to his orders at all times after the execution and delivery of the note in suit.

We are all agreed that the facts in this case clearly distinguish it from Douglas County State Bank v. Sutherland, supra, and that under the facts here the trial court was entirely justified in refusing to allow the amendment of the answer and was further justified in directing verdict in favor of the plaintiff.

Judgment affirmed.

NUESSLE, BIRDZELL, BURKE, and JOHNSON, JJ., concur.